**UNITED STATES of America**

v.

**Joseph Jamene MOORE, Appellant.**

No. 09–2526.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) March 9, 2010.

Filed: March 25, 2010.

Michael A. Consiglio, Esq., Eric Pfisterer, Esq., Office of United States Attorney, Harrisburg, PA, for United States of America.

John A. Abom, Esq., Abom & Kutulakis, Carlisle, PA, for Appellant.

BEFORE: McKEE, BARRY, and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

This matter comes on before the Court on defendant Joseph Moore's appeal from a judgment of conviction and sentence entered on May 22, 2009, in this crack cocaine case. At a trial with Jamel E. Easter and Carlton Easter as co-defendants, a jury found Moore guilty of possession with intent to distribute 50 grams and more of crack cocaine in violation of 21 U.S.C. § 841(a) (Count II) and of conspiracy to possess with intent to distribute 50 grams and more of crack cocaine in violation of 21 U.S.C. § 846 (Count IV). After his conviction Moore moved for a judgment of acquittal or a new trial on the grounds that the evidence was insufficient to support the verdict and the verdict was against the weight of the evidence. The District Court denied the motions and sentenced Moore to consecutive custodial terms of 120 months on each count for a total of 240 months to be followed by five-year concurrent terms of supervised release.

Moore appeals, contending that the government did not prove all of the elements of each of the two offenses beyond a reasonable doubt. He also contends that the District Court erred in denying his motion for a new trial as the verdict was against the weight of the evidence. The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction under 28 U.S.C. § 1291.

The case arose from a reverse sting in which Jamel Easter attempted to purchase crack cocaine from an informant working with the FBI. Though Jamel Easter originally told the informant that he wanted to purchase 18 ounces of crack, he subsequently told the informant that he needed only nine ounces. After the informant notified the FBI of Jamel Easter's attempt to purchase the drug the government arranged a sting to ensnare him. Jamel Easter drove to the site for the delivery in Harrisburg, Pennsylvania, in an automobile in which he had three passengers, Carlton Easter, Moore, and another male who has not been apprehended but who has been identified as Victor Patterson.

The informant was waiting at the site and got into the automobile but Carlton Easter then observed law enforcement officers in the area that he believed were conducting surveillance. When he told the automobile's other occupants of his observations, Jamel Easter moved the automobile to another location. Then Carlton Easter gave the informant $6,000 in cash and said that the drugs were being purchased for him. After the informant with Moore's help counted the money, FBI and local officers attempted to arrest the automobile's occupants, but Jamel Easter initially frustrated that attempt by driving away. During the automobile flight Moore, who had possession of a .40 caliber Glock pistol, threw it to Jamel Easter who took control of it.

The automobile flight was not successful for as Jamel Easter drove away the automobile was damaged rendering it inoperable. Then Moore, Jamel Easter, and Patterson left the automobile and continued to flee. While fleeing Jamel Easter hid the pistol and bag that he was carrying in a ditch. When the automobile's other occupants fled, Carlton Easter, who had been disabled in an earlier incident, remained behind. The officers recovered the pistol and the bag that Jamel Easter had hidden which contained 83.7 grams of crack cocaine and a digital scale. The officers also searched Jamel Easter's automobile and found a bag in the back seat containing 4.7 grams of crack, a box of sandwich bags, and some marijuana. Though Patterson escaped, the pursuing officers arrested Jamel Easter and Moore who sought refuge in an abandoned house. Other officers arrested Carlton Easter.

■ There is no doubt but that the evidence plainly showed that Moore was part of a conspiracy to possess with intent to distribute 50 grams and more of crack cocaine. As we explained in *United States v. Pressler*, 256 F.3d 144, 149 (3d Cir.2001), and *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir.1999), two cases that the parties cite, to prove that there was a criminal conspiracy the government must establish that the co-conspirators had a unity of purpose, an intent to achieve a common goal, and an agreement to work together toward that goal. In assessing the adequacy of the evidence we review the evidence in the light most favorable to the government as the verdict winner and consider both direct and circumstantial evidence. *See United States v. Wert–Ruiz*, 228 F.3d 250, 256 (3d Cir.2000). Here Jamel Easter arranged for the purchase of the crack and Carlton Easter said the drugs were for him. Furthermore, Carlton Easter had possession of the cash to pay for the drugs and he identified law enforcement officers at the place that the transaction was to be completed, thus enabling Jamel Easter to move in an attempt to avoid them. Of course, the nine ounces of crack that the conspirators attempted to purchase was far in excess of the 50 grams charged in the indictment. It is also significant that the conspirators were attempting to acquire such a large quantity of crack that it is reasonable to infer that the attempted purchase was not to be for their personal use. *See United States v. Rodriguez*, 961 F.2d 1089, 1092 (3d Cir. 1992).

Moore implicated himself in the conspiracy by bringing a pistol to the scene of the projected crack transaction. It is well known that drug transactions are dangerous endeavors and, accordingly, the jury could draw a logical inference that Moore was there to protect the purchasers. Furthermore, he engaged as an active participant in the attempted purchase when he helped the informant count the money. Thus, Moore's role furthering the goal of the conspiracy was active not passive and it is clear that the evidence supported his conspiracy conviction.

■ For the government to prove the possession with intent to distribute the crack cocaine count it was required to establish that Moore knowingly possessed or constructively possessed the crack cocaine and did so with the intent to distribute it. Here Moore came to the scene of the contemplated purchase armed and, as we have indicated, it is fair to draw an inference that he was there to protect the transaction. Though Jamel Easter had physical possession of the crack that he brought to the scene of the purchase but discarded during his flight, the evidence supported the conclusion that the passengers in the automobile were cooperating in a crack business. Consequently it was

reasonable for the jury to infer that the passengers, including Moore, had dominion and control constructively through the other conspirators over the crack that they already had acquired and was part of their inventory. *See United States v. Martorano*, 709 F.2d 863, 866 (3d Cir.1983). Thus, the evidence supported the possession charge against Moore.

With respect to constructive possession we point out that the District Court instructed the jury that:

> If an individual has the ability to exercise substantial control over an object that he does not have in his physical custody, then he is in possession of that item. An example of this from every day experience would be a person's possessions [sic] of items which he keeps in a safety deposit box in his bank. Although the person does not have physical custody of these items, he exercises substantial control over them, so he has what is known as constructive possession of them.

App. at 521–22. Accordingly, the jury was free to consider the constructive possession theory of the possession with intent to distribute charge and, as we explained in *Martorano*, could predicate a conclusion that Moore constructively possessed the crack based on the ample circumstantial evidence against him. *See* 709 F.2d at 866.

For the foregoing reasons the judgment of conviction and sentence entered on May 22, 2009, will be affirmed.